| | | |
|---|---|---|
| NUTRAMAX LABORATORIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| KETO BURN XTREME, | ) | Civil Action 8:19-cv-01117-WFJ-AEP |
| KETO RESEARCH LABS, GREEN BRICK | ) | |
| MEDIA LLC, DO SLIM FITNESS LLC, | ) | **JURY TRIAL DEMANDED** |
| JAMES LIBURDI, AND DANIEL LIBURDI, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**VERIFIED FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE
RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Nutramax Laboratories, Inc. ("Nutramax") files this Verified First Amended
Complaint against Keto Burn Xtreme ("Keto Burn"), Keto Research Labs ("Keto Research"),
Green Brick Media LLC, Do Slim Fitness LLC, James Liburdi, and Daniel Liburdi (collectively
"Defendants"), and in support thereof alleges as follows:

**NATURE AND BASIS OF ACTION**

1.      Nutramax owns the trademark forming the basis of this complaint.  For several
decades, Nutramax has researched, marketed, distributed, and sold high quality nutritional
supplement products for use by humans and animals throughout the United States and
internationally under its trademarked name, NUTRAMAX LABORATORIES®.

2.      Defendants Keto Burn and Keto Research are scam organizations working in
unison to manufacture, market, and distribute dietary supplements for use by humans, including
"Keto Burn Xtreme" and "Detox Burn Xtreme."

3.      Defendants operate a website (the "Website") at the domain name https://tryketoburnxtreme.com (the "Domain Name") that allows consumers to order its Keto Burn Xtreme and Detox Burn Xtreme products. Specifically and as discussed in more detail below, the Website is registered via Namecheap to an account called "greenbrickmedia." Information associated with the account includes an email address related to DoSlimFitnessLLC. The account's transaction history shows that the credit cards used to operate the account are in the names of James and Daniel Liburdi.  Thus, it is believed that the Website is owned and operated by James and Daniel Liburdi using the names of Green Brick Media LLC and Do Slim Fitness LLC.

4.      As part of their scam, Defendants offer consumers a "trial" membership for 17 days, after which their membership is "automatically and without further notice" converted to a "RECURRING MONTHLY SUBSCRIPTION to Keto Burn Xtreme Services" at a current standard one-month membership rate of $89.84, a fact that is only buried in the terms and conditions of the Website.

5.      After purchasing Defendants' products, consumers see the monthly charge associated with Nutramax, such as "Nutramax Plus" or "PLUSNUTRAMAX," on their credit card statements.  As a result, consumers are fraudulently misled into believing that Nutramax is the supplier of Defendants' products and the beneficiary of Defendants' scam.

6.      Defendants' conduct constitutes both trademark infringement and fraud.  As a result, Nutramax is suffering a loss to the enormous goodwill that it has built in its industry-leading brands.  Defendants' false and misleading designation of origin of its products causes ongoing customer confusion, as well as both actual and irreparable harm to Nutramax.

7.     Nutramax seek both preliminary and permanent injunctive relief, as well as its actual damages, a disgorgement of Defendants' profits, punitive damages, costs, and reasonable attorneys' fees.

## THE PARTIES

8.     Plaintiff Nutramax is a corporation organized and existing under the laws of the state of South Carolina. Nutramax maintains its headquarters and principal place of business at 946 Quality Drive, Lancaster, South Carolina 29720.  Nutramax is the owner of the well-known NUTRAMAX LABORATORIES® trademark, which it uses to identify dietary and nutritional supplements sold to consumers throughout the United States and abroad.

9.     It is believed that Defendants Keto Burn and Keto Research ("Keto Burn") are in fact persons or entities operating under these names.  However, neither Defendant's name is registered as a legal entity or DBA to Plaintiff's knowledge.  It is believed that each Defendant name is in fact an alter ego of the same persons or entities behind the scam.  It is believed that Defendants James Liburdi, Daniel Liburdi, Green Brick Media LLC, and/or Do Slim Fitness LLC are doing business as Keto Burn and Keto Research.

10.     Defendants operate with a principal place of business in Tampa, Florida.  The Website identifies an address at 10028 S. Church Ave., Ste. 18827, Tampa, Florida 33629.  However, this address does not exist.  The Defendants' product packaging lists a Post Office Box at 1002B S. Church Ave., P.O. Box 18827, Tampa, Florida 33629. Defendant James Liburdi is the current owner of this P.O. Box.

11.     On information and belief, the discrepancy between the fake "10028" street number listed on the Website, and the real "1002B" street number on the packaging is an intentional misdirection by Defendants.

3

12.     Defendant Green Brick Media LLC ("Green Brick") is a limited liability company registered in Wyoming. Green Brick lists a principal office at 30 N. Gould St., Suite 4000, Sheridan, WY 82801. It also provides a mailing address of 412 N. Main Street, Suite 100, Buffalo, WY 82834.

13.     Defendant Do Slim Fitness LLC ("Do Slim Fitness") is a limited liability company registered in Wyoming. Do Slim Fitness lists a principal office and mailing address of 30 N. Gould St., Suite R, Sheridan, WY 82801.

14.     Defendant James Liburdi is an individual that is believed to reside at one of 101 South 12th Street, Tampa, Florida 33602 or 1042 Bellasol Way, Unit 401, Apollo Beach, FL 33572-3087. James Liburdi is believed to be an owner and/or operator of the Keto Burn entities.

15.     Defendant Daniel Liburdi is an individual that is believed to reside at one of 101 South 12th Street, Tampa, Florida 33602 or 1042 Bellasol Way, Unit 401, Apollo Beach, FL 33572-3087. Daniel Liburdi is believed to be an owner and/or operator of the Keto Burn entities. It is also believed that Daniel Liburdi is an owner and/or officer of Green Brick, as evidenced by his signing Green Brick's 2019 Limited Liability Company Annual Report.

16.     The Domain Name at which the Website is located was registered through Namecheap, Inc., a domain name registrar. The Website was registered with Namecheap under the username "greenbrickmedia" with an address of 802 W. Sheridan, Sheridan, WY 82808. Sheridan, Wyoming is the same city where both Green Brick and Do Slim Fitness purport to maintain offices.

17.     The contact email address provided to Namecheap for the greenbrickmedia account is "DoSlimFitnessLLC@gmail.com." The email address VendurSupplyer123LLC@gmail.com was also used in connection with this account. Additional websites used for supplement sales have been registered using this same account with Namecheap between March 31, 2016 and April 13,

2019. Most, if not all, of the transactions associated with this Namecheap account were paid for using credit cards in the name of either James Liburdi or Daniel Liburdi.

18.     Additional services for the Website are provided by Cloudflare, Inc. The email address provided to Cloudflare in connection with the Website is contact@greenbrick-media.com. Additional websites used for supplement sales have used the same Cloudflare, Inc. account between April 26, 2019 and May 21, 2019.

19.     Defendants are working in unison to advertise, promote, offer for sale, and sell their Keto Burn Xtreme and Detox Burn Xtreme products to consumers throughout the United States, including in this District.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over Nutramax's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under the Federal Lanham Act, 15 U.S.C. §§ 1051 et seq.

21.     This Court has supplemental jurisdiction over Nutramax's related state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

22.     Defendants are subject to personal jurisdiction in this Court because they list their principal place of business as being located in Tampa.  Defendants also purposefully avail themselves of the benefits of doing business in the State of Florida by using locations and Post Office boxes within this state to conduct business.  Defendants are subject to personal jurisdiction in this Court because they purposefully availed themselves of the benefits of doing business in the State of Florida by advertising, promoting, offering for sale and/or selling products and services to consumers located in this state, or aiding and abetting others in doing so.  Defendants are thus

committing tortious acts in Florida and have wrongfully caused Nutramax substantial injury in the State.

23.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2) and (c)(3) because a substantial part of the events or omissions giving rise to Nutramax's claims occurred in this District.

## FACTUAL BACKGROUND

### I.     NUTRAMAX AND ITS PRODUCTS

24.     Nutramax licenses its intellectual property, including the Mark, as defined herein, to certain subsidiary companies who in turn research, market, distribute, and sell high quality nutritional supplements for humans and animals.  These products are world-renowned for their high quality.

25.     These health products embodying Nutramax intellectual property are sold throughout Florida, the United States, and the world, through a network of authorized resellers.

26.     Since at least as early as 1992, Nutramax, on its own and through its licensed affiliates and resellers, has sold its health supplement products across the United States through a diversified portfolio of well-recognized and widely-trusted brands, including but not limited to its NUTRAMAX LABORATORIES® Mark.

27.     Health supplements bearing Nutramax's intellectual property, including the Mark, are utilized to help reduce joint discomfort, support liver health support heart health, and support intestinal functions, among other uses.

28.     Health supplements bearing Nutramax's intellectual property are widely regarded as the gold standard in the nutritional supplement industry because they are supported by research and studies, contain verified and validated active ingredients from reliable sources, and are

manufactured in accordance with strict standards that ensure consumers receive a high-quality, safe, and effective product.

29.     The active compounds used in the health supplements bearing Nutramax's intellectual property adhere to strict purity and quality standards, which differentiates these products from many other products on the market that use inferior ingredients from unverified suppliers. The specific compounds and ingredients used in in the health supplements bearing Nutramax's intellectual property have been researched, tested and validated, and Nutramax has taken substantial steps to ensure that these products are of the highest quality. Using a quality management system, Nutramax, through its licensed affiliates, maintains strict control over each step of the manufacturing process.

30.     Over the years, Nutramax and its licensed affiliates have spent millions of dollars researching and developing their innovative health supplement products, and devote significant financial resources each year to marketing as well.

31.     By virtue of Nutramax's commitment to the development and testing of its products, Nutramax has become acclaimed for its high-quality health supplement products. Nutramax's products are some of the most well-known and respected in the industry.

32.     Nutramax uses, owns, and has registered on the Principal Register of the United States Patent and Trademark Office a number of its trademarks, including the following mark relevant to this action (the "Mark"):

| Mark | Reg. No. | Reg. Date | Class/Goods |
|------|----------|-----------|-------------|
| NUTRAMAX LABORATORIES | 2231260 | Mar. 16, 1999 | Dietary food supplements |

33.     Nutramax's federal trademark registration was duly and legally issued, is valid and subsisting, and constitutes prima facie evidence of Nutramax's exclusive ownership of the Mark.

34.     The Mark is incontestable pursuant to 15 U.S.C. § 1065.

35.     The Mark is famous under federal trademark law.

36.     Nutramax has invested many millions of dollars and has expended significant time and effort in advertising, promoting and developing its trademarks and other intellectual property, including the Mark, throughout the United States.  As a result of such advertising and promotion, Nutramax has established substantial goodwill and widespread recognition in the Mark, which has become associated exclusively with Nutramax, by both customers and potential customers, as well as the general public at large.

37.     To create and maintain such goodwill among its customers, Nutramax has taken substantial steps to ensure that products bearing its trademarks, including the Mark, are of the highest quality. As a result, Nutramax trademarks, including the Mark, have become widely known and are recognized throughout the United States as symbols of high quality products.  Customers throughout the United States recognize the Nutramax name, upon which they rely for high quality products.

38.     As a result of, *inter alia*, the care and skill exercised by Nutramax in the conduct of its business, the high quality of the goods sold under Nutramax's trademarks, including the Mark, and the extensive advertising, sale, and promotion by Nutramax of its products, the Mark has acquired secondary meaning in the United States, including in the State of Florida.

39.     Nutramax is not now, nor has it ever been, affiliated with Defendants and has not now, nor has it ever, given Defendants permission to use its Mark.

**II. DEFENDANTS' UNLAWFUL CONDUCT**

**a. Defendants' Product Sales and Marketing**

40.     Defendants manufacture, advertise, market, offer to sell, and sell supplement products called "Keto Burn Xtreme" and "Detox Burn Xtreme," which purport to help the human body burn fat.  Defendants sell similar supplement products via additional websites.

41.     Defendants advertise, market, offer to sell, and sell products through various websites, including but not limited to <tryketoburnxtreme.com>.  Images of the products offered for sale are provided below:



42.     The bottles of the Keto Burn Xtreme product indicate that they are "Distributed for: Keto Research Labs, Albuquerque, NM 87102, Phone: 1-800-283-6429."  The bottles list a "Return Address" of 1002B S. Church Ave, STE #18827, Tampa FL 33629.  This address corresponds to a P.O. Box registered to James Liburdi.  A "Support Email" is identified as support@TryKetoBurnXtreme.com.  Orders of Defendants' products are sent via USPS and arrive with a return address listed as "Keto Research Labs, 1002B S. Church Ave., 18827, Tampa, FL 33629," as shown in the images below:



43. The Website also lists a "Return Address" of "Fulfillment Center, Attn: Keto Burn Xtreme Returns, 10028 S. Church Ave, Ste. 18827, Tampa, FL 33629."

44. Based on publicly available data, there is no business or fulfillment center located at 10028 S. Church Ave, Ste. 18827, Tampa, FL 33629. Defendants have therefore deceived consumers by providing inaccurate contact information on the Website and on any product packaging that uses this address.

45. The phone number provided by Defendants is for a commercial call center that is not exclusive to Defendants.

46. In response to a request for contact information for Defendants from an individual who answered this phone number, the individual provided the address 1002B S. Church Ave, Tampa FL 33629. This address corresponds to a United States Post Office branch location. It is also the same address listed on Defendants' products, but differs from the address listed on the

Website. As noted above, Defendant James Liburdi is the current owner of a P.O. Box at this location that is listed on other materials associated with Defendants' products.

47. Defendants have shipped products ordered from the Website via an account with Stamps.com, including at least Stamps.com Account #6850190 and Meter #10098335. According to information provided by Stamps.com, this account is registered to Daniel Liburdi, with an email address of VendurSupplyer123LLC@gmail.com and an address of 101 South 12th Street, Tampa, Florida 33602.

48. Defendants have taken steps to mask the identities of the individuals or entities that operate and/or are associated with its business. As discussed above, the Website lists an incorrect address and provides the phone number to a third-party call center.

49. Defendants also uses third party services to mask the registrant of the Domain Name. The WHOIS for <tryketoburnxtreme.com> identifies WhoisGuard, Inc., a Panama corporation, as the Domain Name's registrant. Attached hereto as Exhibit 1 is a copy of the WHOIS information for <tryketoburnxtreme.com>.

50. Based on public information, WhoisGuard provides a service that lists itself as a domain name's registrant in order to prevent a domain name's true owner from being publicly identified.

51. The WHOIS for <tryketoburnxtreme.com> also identifies NAMECHEAP INC as the Domain Name's registrar. Based on public information, Namecheap is a Delaware corporation that offers domain name registration services to consumers in the United States in exchange for monetary fees.

52. Due to Defendants' use of these third party services, the true identity of the owner of the Domain Name and the Website is not publicly available. Based on discovery provided by

third parties Cloudflare and Namecheap, the Website is believed to be owned and operated by James and Daniel Liburdi using Green Brick and Do Slim Fitness LLC's names.

53. Information provided by Cloudflare and Namecheap indicates that many similar websites are operated by the owners and operators of tryketoburnxtreme.com. For example, the account that paid Namecheap for registrar services for tryketoburnxtreme.com has paid for additional website services between March 31, 2016 and April 2019.

54. Green Brick Media's certificate of organization was filed with the Wyoming Secretary of State on April 5, 2016. The filing indicates that it appointed a registered agent on March 31, 2016, the same date that the greenbrickmedia account made its first purchase of website services from Namecheap and shortly before an individual using the email address contact@greenbrick-media.com created an account with Cloudflare.

**b. Defendants' Trademark Infringement and Fraudulent Conduct**

55. The Website located at <tryketoburnxtreme.com> offers consumers a "trial membership" of its products. The trial membership provides consumers "a 30 day supply of our product, for 17 days (13 + 4 day shipping) program starting on the day you submit your trial membership application to the Site." A true and correct copy of the "Terms & Conditions" from Defendants' website is attached hereto as Exhibit 2.

56. Defendants' terms and conditions state that "[u]nless and until you notify us that you wish to cancel or terminated your membership to the Site, you hereby agree and authorize Keto Burn Xtreme or its designated agent or assignee to automatically renew your membership to the Site on a continuing monthly basis and to charge your credit card (or other approved facility) to pay for the ongoing cost of your membership of $89.84 + $0.00 for S&H. You hereby further authorize Keto Burn Xtreme or its designated agent or assignee to charge your credit card (or other

approved facility) for any and all purchases of products, services and entertainment provided to you by or through the Site."

57. Consumers have complained that the trial membership described on the Website is a scam where consumers receive only a few days with their product before their credit card is charged the full monthly fee.

58. Consumer complaints filed with the Better Business Bureau have also associated the Keto Burn Xtreme and Detox Burn Xtreme products with Do Slim Fitness. The complaints provided reported similar conduct, wherein consumers believed they signed up for a free trial of a product but subsequently received charges of over $89 on their credit card bills. Attached hereto as Exhibit 3 are true and correct copies of printouts from the Better Business Bureau's website profile of Do Slim Fitness.

59. The Better Business Bureau lists the website doslimmaxlean.com as associated with Do Slim Fitness. According to information provided by Namecheap, this website's register information is also associated with the greenbrickmedia account. The credit card used to pay for Namecheap's services with respect to this website is under the name James Liburdi.

60. According to certain consumers that reached out to Nutramax, when consumers sign up for membership with Defendants, their invoice or credit card information indicates that their purchase was from Nutramax. For example, one customer contacted Nutramax to complain about the charges they incurred and provided that the charge on her billing statement read "PLUSNUTRAMAX*GARCINIA, PLUSNUTRAMAX*DETOX."

61. Other consumers has similarly contracted Nutramax stating that they received charges on their credit card statement from "Nutramax Plus." Others stated that their credit card statement listed "Nutramax Plus" and also included Nutramax's toll-free telephone number.

62.    When consumers receive an invoice or credit card statement listing "PLUSNUTRAMAX," "Nutramax Plus," or Nutramax's toll-free telephone number, they are fraudulently led to believe that Nutramax is responsible for their charges and is benefitting from the Defendants' membership scam.

63.    Due to this confusion, consumers wishing to cancel their order or file a complaint regarding Defendants research Nutramax and find its contact information. Consumers mistakenly believe that Nutramax sells the Keto Burn Xtreme and Detox Burn Xtreme products.

64.    Further, information provided by Namecheap and Cloudflare indicates that Defendants have also improperly used Nutramax's mark in connection with other websites. For example, Cloudflare's records indicated that the account associated with the Website is also associated with websites such as www.detoxstarnutralabs.com and www.ketostarnutralabs.com

65.    According to information provided by Namecheap, the websites www.ketostarnutralabs.com and www.detoxstarnutralabs.com are also associated with the greenbrickmedia account. Registrar services for both websites were purchased through Namecheap on April 12, 2019 using a credit card under the name James Liburdi.

66.    Defendants are using Nutramax's Mark to perpetuate this scam and to capitalize and profit to the detriment of Nutramax.

67.    Defendants' use of Nutramax's Mark to carry out this scam was and continues to be willful and with bad faith intent to confuse the public.

68.    Defendants' use of Nutramax's Mark has significantly diluted the value and distinctive quality of Nutramax's Mark and has caused and continues to cause irreparable harm to Nutramax's goodwill and reputation with consumers.

### c. Defendants James and Daniel Liburdi's conduct warrants piercing the corporate veil with respect to the other named Defendants

69. Defendants James and Daniel Liburdi have acted in a manner that warrants piercing the corporate veil with respect to the conduct of the other named Defendants to hold them jointly and personally liable for the claims below and the conduct of Keto Burn, Green Brick, and Do Slim Fitness.

70. For example, the Liburdis have not maintained formal separation between themselves and Defendants Keto Burn, Green Brick, and/or Do Slim Fitness.

71. For example, the Post Office Box that Keto Burn uses for return shipments is registered in the personal name of James Liburdi; it is not registered to any corporate entity.

72. As another example, shipments of products ordered from the Website have shipped using a Stamps.com account registered to Daniel Liburdi with the email address VendurSupplyer123LLC@gmail.com, rather than an account registered to a corporation. That same email address was also provided to the "greenbrickmedia" account with Namecheap, which is used to obtain Registrar services for the Website and similar websites.

73. While the Namecheap account for the Website and similar websites identifies "greenbrickmedia" as the user ID and DoSlimFitnessLLC@gmail.com as an email address, the credit card payments used to pay for purchases on the account are in the individual names of James and Daniel Liburdi.

74. It is believed that James and Daniel Liburdi have used the corporate Defendants' identities as alter egos for fraudulent purposes, in order to hide themselves as the true beneficiaries of the scam conduct described above.

75. Further, even if piercing the corporate veil is not warranted, James and Daniel Liburdi should nonetheless be jointly and personally liable for the claims in this case because they

performed the conduct at issue themselves and were acting in their individual capacities by using the unregistered Keto Burn DBAs and by not registering the entities to do business in Florida.

## COUNT I
### Trademark Infringement – 15 U.S.C. § 1114

76.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

77.     Defendants' use of Nutramax's famous Mark in connection with the scams described herein is likely to cause and actually causes confusion and mistake, and/or deceives consumers as to the affiliation, connection, or association of Defendants' and their products and services with Nutramax and its products and services.

78.     Defendants know that their conduct is likely to so mislead consumers.

79.     Defendants' trademark infringement has been and is deliberate, willful, malicious and fraudulent because Defendants are intentionally capitalizing on the name, assets, and goodwill of Nutramax and its famous Mark.

80.     As a direct and proximate result of Defendants' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1114 and 1116. Nutramax has also suffered irreparable harm for which there is no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

## COUNT II
### Trademark Dilution – 15 U.S.C. § 1125(c)

81.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

16

82.     Nutramax's Mark is famous and distinctive and is entitled to protection against dilution by blurring or tarnishment.

83.     Defendants' use of Nutramax's Mark in connection with the scams described herein is causing dilution of the distinctive qualities of the Mark.

84.     Defendants' violations of the Lanham Act have been and are deliberate, willful, malicious and fraudulent because Defendants are intentionally presenting consumers with Nutramax's name and Mark in connection with its scams, which has caused and continues to cause damage to Nutramax's reputation and dilution of its famous Mark.

85.     As a direct and proximate result of Defendants' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as provided in 15 U.S.C. § 1116 and 1117. Nutramax has no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

### **COUNT III**
### **False Designation of Origin – 15 U.S.C. § 1125**

86.     Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

87.     Defendants' improper use of Nutramax's Mark constitutes a false designation of origin, a false or misleading description of fact or a false or misleading representation of fact. The foregoing activities are likely to cause confusion as to the origin, sponsorship or approval of the various trial offers and products described above.

88.     Defendants' use of Nutramax's Mark in connection with the scam described above is deliberate, willful, malicious and fraudulent.

89.     As a direct and proximate result of Defendants' conduct, Nutramax has been damaged in an as yet undetermined amount and is entitled to the remedies and compensation as

provided in 15 U.S.C. § 1114 and 1116. Nutramax has no adequate remedy at law for Defendants' continuing violations of the Lanham Act, as set forth herein.

**COUNT IV**
**Common Law Fraud**

90.  Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

91.  Defendants' use of Nutramax's name and Mark is a false representation of fact. Nutramax is not now, nor has it ever been, affiliated with Keto Burn, Keto Research, the Keto Burn Xtreme and Detox Burn Xtreme products, or the trial offers and scams described above.

92.  Defendants' false representation of fact is material because it has misled and continues to mislead consumers into believing that Nutramax is affiliated with Defendants, the Keto Burn Xtreme and Detox Burn Xtreme products, and/or the trial offers and scams described above.

93.  Defendants have made and continue to make this sort of material misrepresentation of fact with full knowledge of its falsity.

94.  Defendants' use of Nutramax's name and Mark in connection with the scam described above is intentional.

95.  Consumers are unaware that Nutramax is not affiliated with Keto Burn, Keto Research, the Keto Burn Xtreme and Detox Burn Xtreme products, or the trial offers and scams described above and rely on Defendants' representation that it is. This is shown by at least consumers contacting Nutramax to address complaints regarding these scams with the understanding that Nutramax is behind and/or profiting from them.

96. Consumers' reliance on Defendants' false representations is reasonable, as Nutramax's name shows up on consumers' credit card statements in connection with the purchase of the Keto Burn Xtreme and/or Detox Burn Xtreme products.

97. Both Nutramax and consumers are proximately harmed by Defendants' false representations; consumers are left without any redress for the pecuniary injury suffered due to the scam trial offers, and Nutramax suffers extraordinary harm to its reputation and goodwill (both as a business and of its registered Mark) as previously explained.

98. As a result of Defendants' fraudulent conduct, Nutramax has suffered and continues to suffer damages in an amount yet to be determined.

## COUNT V
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### (Fl. § 501.201-13)

99. Nutramax incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully repeated and restated herein.

100. Defendants' past and continued use of Nutramax's Mark with the intent to deceive and defraud the public into believing that their Keto Burn Xtreme and Detox Burn Xtreme products and trial offer scams are affiliated with Nutramax constitutes unfair and deceptive acts or practices in violation of Fla. Code. Ann. § 501.201 *et seq.*

101. Defendants' unfair and deceptive conduct in violation of this act have been willful and knowing.

102. As a result of Defendants' conduct, Nutramax has suffered actual damages to its reputation and goodwill with consumers.

## JURY TRIAL

103. Nutramax claims a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nutramax respectfully prays for the following relief:

A.     The Court enter judgment in favor of Nutramax and against Defendants on all counts, holding each Defendant jointly and severally liable.

B.     The Court enter a preliminary and permanent injunction enjoining Defendants, their agents, divisions, subsidiaries, officers, employees, attorneys, and all those persons acting in concert with them from making false and misleading statements in connection with its Keto Burn Xtreme or Detox Burn Xtreme products, including but not limited to those identified above;

C.     The Court enter a preliminary and permanent injunction enjoining Defendants from using Nutramax's Mark or any variation thereof;

D.     Award Nutramax its actual damages incurred as a result of Defendants' wrongful acts as described herein;

E.     Award Nutramax treble damages pursuant to 15 U.S.C. § 1117 and/or S.C. Code Ann. § 39-5-140;

F.     Award punitive damages to deter future similar conduct by Defendants;

G.     Award the Nutramax its reasonable attorneys' fees and costs;

H.     Award the Nutramax pre-judgment and post-judgment interest in the maximum amount allowed under the law;

I.     Enter a finding that Defendants have willfully and deliberately engaged in false advertising and unfair practices and find that this is an "exceptional case" under the Lanham Act; and

J.     Award such other and further relief as it deems just and reasonable.

Respectfully submitted, this 3rd day of July, 2019.

By: */s/ Ryan W. Koppelman*
    Ryan W. Koppelman
    Florida Bar No. 909041

    ALSTON & BIRD LLP
    1950 University Ave.
    5th Floor
    East Palo Alto, CA 94303
    Telephone: 650-838-2000
    Facsimile:  650-838-2001
    *ryan.koppelman@alston.com*

    *Attorneys for Plaintiffs Nutramax*
    *Laboratories, Inc.*